Steven MILEUSNICH, Appellant–
Plaintiff

v.

NOVOGRODER CO., INC.,
Appellee–Defendant.

No. 45A03–9404–CV–144.

Court of Appeals of Indiana,
Third District.

Dec. 6, 1994.

Rehearing Denied Feb. 13, 1995.

George S. Brasovan, Lucas, Holcomb & Medrea, Merrillville, for appellant.

Ray L. Szarmach, Szarmach & Fernandez, Hammond, for appellee.

STATON, Judge.

Steven Mileusnich ("Mileusnich") appeals from the trial court's judgment denying him relief. Mileusnich presents one restated issue for our review: whether the trial court erred in denying his claim for the return of his security deposit tendered pursuant to a lease.

We reverse and remand.

The facts most favorable to Mileusnich show that Mileusnich and Novogroder Co., Inc. ("Novogroder") entered into a one year lease agreement from July 29, 1993 through July 31, 1994. Mileusnich gave Novogroder

a $525.00 security deposit when he signed the lease. Mileusnich attempted to take possession of the apartment on August 7, 1993 and August 11, 1993 but on both days was told that the apartment was not yet completed. On August 11, 1993, after being informed that the unit would be ready in three days, Mileusnich requested the return of his security deposit and tore up the lease. Mileusnich never took possession of the apartment. Two weeks later, Mileusnich sent a letter to Novogroder requesting his security deposit be returned to him at his lawyer's address. Novogroder ignored Mileusnich's request and relet the premises in mid-September. Mileusnich filed a complaint against Novogroder demanding the return of his security deposit plus attorney fees. Novogroder filed a counterclaim seeking damages for breach of lease.[1] The trial court denied any relief. This appeal ensued.

■■■ When reviewing an appeal from a negative judgment we must determine whether the judgment is contrary to law. *McClure Oil Corp. v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, 553, *reh. denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, 489, *trans. denied.* In determining whether a negative finding is contrary to law, we will neither reweigh the evidence nor reassess the credibility of the witnesses. *Clark v. Clark* (1991), Ind.App., 578 N.E.2d 747, 749. We will reverse a judgment only if the evidence is without conflict and leads but to one conclusion, which is the opposite of that reached by the trial court. *Grueninger Travel Service of Ft. Wayne, Indiana, Inc. v. Lake County Trust Co.* (1980), Ind.App., 413 N.E.2d 1034, 1038, *reh. denied.*

At the bench trial, Mileusnich argued that he was entitled to the return of his security deposit pursuant to the Security Deposits Statute ("Security Deposits Statute"). IND. CODE 32–7–5 *et seq.* (1993). Novogroder countered that Mileusnich's claim was premature because the rental agreement did not terminate until July 31, 1994 and the Security Deposits Statute was therefore not yet applicable. Because termination is key under the Security Deposits Statute, our first inquiry must be whether the lease actually terminated and if so, when.

■■■ A surrender of tenancy is a yielding of the tenancy to the owner of the reversion or remainder, wherein the tenancy is submerged and extinguished by the agreement. *Grueninger, supra,* at 1038. Surrender may be either express or by operation of law. *Id.* A surrender will arise by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply they have both agreed to consider the surrender as effectual. *Id.* Mere yielding of the premises by the tenant to the landlord does not constitute surrender or acceptance. *Hirsch v. Merchants National Bank & Trust Co.* (1975), 166 Ind.App. 497, 336 N.E.2d 833, 839, *reh. denied.* There must be some decisive, unequivocal act by the landlord which manifests the lessor's acceptance of the surrender. *Grueninger, supra,* at 1039. Surrender and acceptance will be determined on a case-by-case basis by examining the acts of the respective parties in each case. *Id.*

■■ This Court has examined a variety of factors when determining whether there has been a surrender and acceptance. In both *Hirsch, supra,* and *Sigsbee v. Swathwood* (1981) Ind.App., 419 N.E.2d 789, this court determined that the landlord accepted the tenant's surrender when the landlord retook possession of the premises after the tenant vacated prior to the termination of the lease. This entry by the landlord ended the tenant's obligation to pay rent under the lease. *Hirsch, supra,* 336 N.E.2d at 837; *Sigsbee, supra,* at 800.

In *Grueninger,* the court determined that the acceptance of keys by the landlord alone did not amount to acceptance of surrender and noted that the subsequent reletting of the premises to a third party did not constitute acceptance of surrender by the land-

---

1. Novogroder abandoned its counterclaim at the   trial. Record, pp. 38–39.

lord.[2] *Grueninger, supra,* at 1045. The court distinguished its conclusion from *Hirsch* where the landlord itself was the successor tenant not a third party. *Id.* The *Grueninger* court acknowledged that when a landlord retakes possession for its own purpose such constitutes an acceptance of surrender. *Id.*

Mileusnich contends that the lease terminated on August 11, 1993 when he tore it up and declined to take possession. Novogroder contends that the lease did not terminate until August 31, 1994 and that it never accepted Mileusnich's surrender.

■ This case offers a unique set of facts which distinguish it from *Grueninger, supra, Hirsch, supra,* and *Sigsbee, supra.* This action does not arise out of a claim for damages by Novogroder for breach of lease. Instead, Mileusnich is seeking only the return of his security deposit. Mileusnich never took physical possession of the premises but did make two attempts to move into the apartment and on both occasions was told that the apartment was not ready.[3] Novogroder did not initiate any contact with Mileusnich after the surrender on August 11, 1993. Novogroder did not send Mileusnich any rental no-tices or any other material evidencing a continued obligation under the lease. Furthermore, Novogroder did relet the premises after receiving Mileusnich's letter of September 1, 1993.

■ We conclude that Mileusnich surrendered the premises when he tore up the lease and that Novogroder accepted this surrender when it relet the premises in mid-September.[4] Accordingly, the lease agreement terminated on the day Novogroder relet the premises.[5] We must now determine whether Novogroder complied with the Security Deposits Statute after termination of the lease occurred.

■ The Security Deposits Statute requires that a landlord return an entire security deposit to the tenant except for any amount applied to accrued rent, damages suffered by the landlord as a result of the tenant's noncompliance with the law or rental agreement, and unpaid utility or sewer charges if required to be paid by the tenant. I.C. 32-7-5-12. The landlord must provide a tenant with written notice of the damages within forty-five days of the "termination of the rental agreement and delivery of posses-

2. We recognize that in *Grueninger, supra* at 1045, the Fourth District opined that "the possession by a successor tenant other than the landlord would not necessarily result in an acceptance and surrender by operation of law." However, surrender and acceptance is to be assessed on a case-by-case basis by examining the acts of the respective parties. *Id.* at 1039; *Hirsch, supra,* 336 N.E.2d at 837 (citing *Northern Indiana Steel Supply Co. v. Chrisman* (1965), 139 Ind.App. 27, 34, 204 N.E.2d 668, 672, *trans. denied*). The determination in *Grueninger* focused upon the landlord's claim for damages as a result of the tenant's surrender of the premises prior to the termination of the lease. The Fourth District upheld the trial court's finding that the tenant had a continued obligation to pay rent under the lease even though a subsequent tenant took the possession of the premises.

The issue before us does not arise out of an action by Novogroder for breach of lease. Instead Mileusnich seeks return of his security deposit after being unable to take possession of the leased premises. Because the acts of Mileusnich and Novogroder are distinguishable from that of the landlord and tenant in *Grueninger,* we decline to follow the Fourth District's rule.

3. In his reply brief, Mileusnich alleged that Novogroder's failure to deliver possession on August 11, 1993 constituted a breach of the implied covenant of possession and allowed him to abandon the lease. Mileusnich failed to raise this argument during the trial or in his appellate brief. A reply brief only enables the appellant to respond to the appellee's brief; a party may not assert new issues therein. Ind.Appellate Rule 8.3(C); *Glasscock v. State* (1991), Ind.App., 576 N.E.2d 600, 604, *trans. denied.* Mileusnich has therefore waived this issue.

4. In making this determination, we are not concluding that the reletting of the premises to a subsequent tenant alone is sufficient to constitute a surrender and acceptance by operation of law in every case. A surrender and acceptance by operation of law is still to be determined on a case-by-case basis. *Grueninger, supra,* at 1039.

5. Paragraph #29 of the lease states that the lease will not terminate unless the lessor gives the lessee express written notice to the contrary and the lessee remains liable for rent under the lease. However, the provision is no longer effective as it is a well settled rule that once there is surrender and acceptance, the lease and all liability deriving from it are extinguished. *Northern Indiana Steel Supply Co. v. Chrisman* (1965), 139 Ind.App. 27, 204 N.E.2d 668, 673, *trans. denied* (citing *Donahue et al. v. Rich* (1891), 2 Ind.App. 540, 545, 28 N.E. 1001, 1003).

sion."[6] *Id.* The tenant must provide the landlord with a mailing address in which to deliver this notice. *Id.* If the landlord fails to comply, the tenant is entitled to return of the entire security deposit and reasonable attorney fees.[7] *Id.*

■ Because we have determined that the lease terminated when Novogroder relet the premises, the forty-five day notice provision began to run at that time. The record reflects that Novogroder did not provide Mileusnich with an itemized list of damages as required by the statute or any other explanation for failure to return Mileusnich's deposit. The failure to comply with the notice of damages requirement constitutes an agreement by the landlord that no damages are due. *Chasteen v. Smith* (1993), Ind.App., 625 N.E.2d 501, 502. Because no damages are due, we conclude that Novogroder is required to remit Mileusnich his full security deposit plus any attorney fees incurred. I.C. 32–7–5–12.

We reverse and remand to the trial court with instructions to enter an award in favor of Mileusnich for the amount of his security deposit plus reasonable attorney fees.

HOFFMAN, J., concurs.

NAJAM, J., concurs in result without opinion.

■

---

**6.** This court has recently looked at the rationale behind the forty-five day notice requirement. See *Raider v. Pea* (1993), Ind.App., 613 N.E.2d 870, 872. In *Raider*, the court noted that the notice requirement serves a dual purpose. *Id.* First, it protects tenants from unreasonable delays by their landlords in the resolution of claims against their security deposits. *Id.* Second, by requiring a written, itemized notice, the landlord cannot simply retain the tenant's security deposit without explanation, but must specifically justify any deduction from the deposit for damages. *Id.* at 872–873.

**7.** The trial court noted that the Statute refers to termination in three different ways. Section 32–7–5–12 requires the landlord to provide notice within forty-five days of the "termination of the rental agreement and delivery of possession." Both section 32–7–5–14 and section 32–7–5–15 refer to the notice of damages within forty-five days "after the termination of the occupancy." Finally, section 32–7–5–16 states that the landlord will be liable to the tenant for any amount of the security deposit withheld if the landlord fails to provide a written statement within forty-five days of the "termination of the tenancy or return of the appropriate security deposit."

We need not attempt to distinguish between the different termination requirements because the issue before us is whether the rental agreement was terminated, not whether the occupancy or tenancy was terminated. Section 32–7–5–10 defines a tenant as one who occupies a rental unit. Since Mileusnich never occupied the premises, this case involves neither a tenancy nor an occupancy. Thus, we are only concerned with the provisions of I.C. 32–7–5–12 which require the termination of the rental agreement and delivery of possession.